UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              *Petitioner*,<br>       v.<br><br>CHINA TELECOM (AMERICAS) CORPORATION,<br><br>              *Respondent*. | Case No. 1:20-mc-00116-DLF |

**OPPOSITION TO RESPONDENT'S MOTION FOR BRIEFING SCHEDULE**

Petitioner United States of America ("the Government") respectfully opposes Respondent China Telecom (Americas) Corporation's ("CTA") requested briefing schedule, *see* Mot. for Briefing Schedule, ECF No. 4 ("Motion").  The schedule that CTA requests contains two parts: (1) a request that CTA be given 45 days to file a request for additional information, such as "the [Foreign Intelligence Surveillance Act ('FISA')] application, order and other materials related to the surveillance" at issue, which CTA claims it needs to respond to the Government's petition initiating this matter, and (2) a request for an additional 60 days—after this Court has "rule[d] on CTA's request for information and providing any such information"—to respond to the Government's petition.  *Id.* ¶¶ 15, 16.  The bifurcated and elongated briefing schedule that CTA requests is premised upon the assumption that CTA will obtain the additional information it seeks during these proceedings. Because that prospect is wholly unprecedented and thus, at best remote, CTA's proposed schedule would result in the inefficient use of the Court's and the parties' resources and would unnecessarily delay the resolution of a matter that bears on issues of national security.  Accordingly, while the Government does not oppose providing CTA with 45 days to argue that it should receive additional

information, the Government submits that any such argument should be part of a singular response to the Government's unclassified submissions, which should be filed within 45 days.[1]

On November 24, 2020, the Government filed a petition requesting that the Court (1) initiate a proceeding that would "determine the legality of electronic surveillance" at issue under FISA, and (2) "adopt the schedule proposed" by the Government "for that determination." Pet. 1. The next day, this matter was docketed, see *United States v. China Telecom (Americas) Corp*, No. 1:20-mc-00116 (D.D.C.), and the Court set a schedule to "govern further proceedings" in the case, Minute Order, Nov. 25 2020.

Pursuant to the Court's schedule, the Government today filed a set of *in camera* and *ex parte* materials to assist the Court in assessing the legality of the FISA surveillance that the Government put at issue in proceedings before the Federal Communications Commissions ("FCC"). *See* United States' Notice of Filing, ECF No. 8. The Government also filed an unclassified version of its brief and an unclassified declaration by the Attorney General, setting forth his determination that disclosure of the FISA information and materials requested by CTA, or an adversary hearing with respect to them, would harm the national security of the United States. *See* Unclassified Mem. in Support of the United States' Pet. for a Determination that FISA Surveillance of CTA Was Lawfully Authorized and Conducted, ECF No. 9 ("Gov't Br."); Decl. and Claim of Privilege of the Attorney General of the United States, ECF No. 9-1.

---

[1] Although CTA's Motion indicates that it is seeking an opportunity to respond to the Government's petition initiating these proceedings, *see* Mot. 1 (seeking "a reasonable opportunity to respond to the United States' Petition"); *id.* ¶ 16 (seeking "60 days to respond to the Petition" after a ruling on any request for additional information), the Government assumes that CTA is seeking an opportunity to respond to the Government's filings today. The Government's petition does not seek anything beyond what this Court has already ordered. *See generally* United States' Pet. to Initiate a Determination that Certain FISA Surveillance Was Lawfully Authorized and Conducted, ECF No. 1 (filed Nov. 24, 2020) ("Petition"). The petition sought only to initiate these proceedings and establish a schedule, *see id.*, and this Court has taken both of those procedural steps, *see* Minute Order, Nov. 25 2020.

The Government does not oppose an opportunity for CTA to respond to the unclassified materials that the Government has filed. *See* Pet. 9 (suggesting that "the Court [may] wish to receive a response from CTAC to the Government's unclassified filings"). Indeed, although the Government initially proposed a deadline of "21 days after the Government's unclassified filings" for any response from CTA, *id.*, it would not oppose affording CTA 45 days to respond. However, CTA's proposal for a drawn-out, multi-step briefing schedule—in which the parties first address a separate request by CTA for FISA material pursuant to 50 U.S.C. §§ 1806(f) and 1825(g), then await this Court's decision on that request, and only *then* address any substantive arguments about the legality of the FISA surveillance at issue, *see* Mot. ¶¶ 14-16—is both inefficient and inappropriate in light of the Government's unclassified filings and the nature of these and the underlying FCC proceedings.

The Government's unclassified brief already addresses whether CTA is entitled to any of the FISA material in the Government's *ex parte* and *in camera* submissions. *See* Gov't Br. 14-18, 31-32 (explaining that the Attorney General has determined that disclosure of such material would harm U.S. national security, is not necessary for this Court to determine that the FISA surveillance was lawful, and is not required by due process). It also addresses the constitutionality of the § 1806(f) procedures, *see* Gov't Br. at 18-22, as well as the legality of the FISA surveillance at issue, *see id.* at 25-30. Accordingly, CTA is positioned to address all of these issues in its response to the Government's unclassified filings and need not file any separate request in order to do so. *See* Mot. at 4 n.2 (acknowledging the possibility that "a motion for additional materials" may be "unnecessary"); *see also ACLU Found. of S. California v. Barr*, 952 F.2d 457, 465 (D.C. Cir. 1991) (explaining that "respondents named in th[e] [§ 1806(f)] proceeding … must present not only their statutory but also their constitutional claims for decision" during that proceeding).

Moreover, CTA's response should consolidate any request for additional information with any other challenges it has to the Government's unclassified filings; CTA should not wait to raise those

3

challenges until after the Court decides whether disclosure of any FISA material is necessary. That is so for two reasons. First, FISA makes clear that disclosure of FISA material is appropriate "only where such disclosure is necessary [for the Court] to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f); *see also* Gov't Br. 14-15. Because § 1806(f) links the issue of disclosure to this Court's assessment of the legality of the surveillance, the Court should have before it any arguments CTA wishes to make about the legality of the surveillance—based on the Government's unclassified filings—when the Court considers the issue of disclosure. *See United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) ("Unless and until a district judge performs his or her statutory duty of attempting to determine the legality of the surveillance[,] . . . there is no basis for concluding that disclosure is necessary[.]").

Second, as a practical matter, it does not make sense to preemptively schedule a second round of briefing based solely on the possibility of CTA receiving additional information. As explained in the Government's unclassified brief, "the Government has never been required to disclose FISA information or materials to an aggrieved person under § 1806(f)," and if the Court were to order such a disclosure here, the Government would expect to pursue an appeal. Gov't Br. 31, 33 n.22; *see also* 50 U.S.C. § 1806(h). There is also no meaningful unclassified material that could be disclosed. *See id.* at 31 n.21 (explaining that "[t]here is no unclassified FISA material that is not so intertwined with classified material as to make redaction impracticable and any resulting information of no material value"). To be clear, the Government is not asking this Court to decide *now* whether disclosure of FISA material is "necessary" for the Court to determine the legality of the FISA surveillance at issue, *see* 50 U.S.C. § 1806(f). But given the lack of any precedent for the scenario CTA envisions—*i.e.*, where the Government is required to disclose FISA material—the Court should not adopt a bifurcated briefing schedule premised on the possibility that CTA will be "provid[ed] any such [material]" in these proceedings, Mot. ¶ 16.

4

Lastly, the extended briefing schedule CTA proposes would also be inappropriate in light of the national security concerns underlying the pending FCC proceedings. As explained in the Government's Petition, the Executive Branch recommended that the FCC revoke CTA's domestic and international common carrier licenses based on growing national security concerns with CTA's continued access to U.S. telecommunications infrastructure and its failure to adhere to the conditions of its licenses. *See* Pet. 2. On December 10, 2020, the FCC issued an order instituting proceedings to revoke and terminate CTA's licenses. *See In the Matter of China Telecom (Americas) Corp.,* FCC 20-177, GN Docket No. 20-109, Redacted Order Instituting Proceedings on Revocation and Termination and Memorandum Opinion and Order, ¶ 1 (Dec. 14, 2020). According to the briefing schedule in those proceedings, briefing will conclude by March 1, 2021. *See id.* ¶ 76. Given the national security concerns underlying the FCC's ongoing proceedings, and the timeframe in which those proceedings will unfold, this § 1806(f) proceeding should not be delayed unnecessarily, as CTA's requested schedule would do.

For the foregoing reasons, CTA's Motion for Briefing Schedule should be denied. Instead, the Court should order CTA to file any response to the Government's public submissions—including any request for additional information and any challenge to the legality of the FISA surveillance at issue—within 45 days. The Government would then request the opportunity to file any reply, responding within 30 days of CTA's response.

Dated:  December 15, 2020                                         Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

5

6

        DIANE KELLEHER
Assistant Branch Director, Federal Programs Branch

<u>/s/ *Michael Baer*</u>
MICHAEL H. BAER
N.Y. Bar No. 5384300
Trial Attorney
EMILY SUE NEWTON
Va. Bar No. 80745
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Bench
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-8356
Facsimile: (202) 616-8470
Email: emily.s.netwon@usdoj.gov

*Counsel for Petitioner*